The matter before the court is 17-1359 Beltran v. Interexchange. Thank you, counsel. If you may please the court, I'm Tom Quinn. I represent the appellant, AuPairCare. Thank you for taking time to hear this matter today. I would like to reserve two minutes for rebuttal. And again, I'll remind you that that's your responsibility to try and protect that two minutes. I will do my best. This appeal presents an opportunity to address the congressional purpose behind the Federal Arbitration Act, the FAA, and the requisite content of an arbitration agreement necessary to satisfy that congressional purpose. There are many well-recognized purposes of the FAA, including savings of expense, time, and simplicity. But there's another purpose as well. Recently, Chief Judge Timkovich noted in his concurrence opinion in Dish Network v. Wray that Congress endeavored to minimize judicial oversight in the context of the FAA. In this case, the district court lost sight of that minimal judicial oversight and that congressional mandate when it determined that the APC, AuPairCare, arbitration agreement was substantively and procedurally unconscionable. Well, the Federal Arbitration Act carves out contracts that would be unenforceable under common law, correct? Well, not quite that simply. It would be as if there was fraud, duress, or unconscionability. Okay. And here the claim is unconscionability. Yes. But it would have to be unconscionable in that you would first give deference to, if we're to sort of create a hierarchy or a flowchart, you would create a flowchart of the FAA would be the superior to state court rule, and the state court law cannot, at least according to the Concepcion case, cannot create an exception that would do disservice or injustice to that superior position of the FAA. How the FAA, and let me, that's a good segue to this, how the FAA selection process or the arbitrator selection process works under the FAA is this simple as I see it. There must first be an agreement with an intent to arbitrate. Next, under Section 5 of the FAA, there must be a provision on how the arbitrator is selected. Next, if there's no provision on how the arbitrator is selected or it is deemed to be vague by one of the parties, then you go to Section 5 and have the district court assist the parties in determining or selecting the arbitrator. Finally, if the arbitrator selection process is stated within the arbitration agreement, then the parties must follow that stated method of arbitration resolution, and if the parties don't like the result of that process, then they can appeal under Section 10. It's just that simple. How the arbitration process should have worked in this case is that within its arbitration agreement, it reserved the right to select the arbitrator. It indicated that it would select a neutral provider. Was there any definition of neutral? Pardon me? Any definition of neutral? No, no definition of neutral. So they could pretty much select any provider they wanted? But it has to be. Apply whatever rules or procedures they wanted. No, the California rules of civil procedure are stated. How the process would be resolved. The neutral provider was the term. Who gets to decide whether they're neutral then? You do, right? Well, if you look at the first of all, the FAA doesn't give an indication that there must be some sort of declaration or statement or provision of neutrality by the arbitrator. It is a provider. And I don't mean to give that short shrift by any means. But if you look at that Mark Rich Incorporated case that I cited, I understand it's the Southern District of New York and it's a 1978 case. But having said that, it really discusses some of the presumptions that go into the FAA. And there is a presumption of neutrality and lack of bias by the arbitrator, him or herself. When they sign off on that declaration, when they declare that they can be a fair provider, then that is presumed within there. And that Section 10 of the ---- I guess I am struggling a little to understand your argument. Are you saying that we just can't even consider in terms of substantive unconscionability the fact that the employer is going to make all the decisions as far as who provides the arbitration? We can't even consider it as long as it's there and there's a provision that says, well, the employer will select the arbitrator and that arbitrator will be neutral, presumably. Does that mean we just can't consider that? Is that what you're suggesting in terms of a factor contributing towards unconscionability? It's not what I'm suggesting. What I'm suggesting is that it would be the timing of where the determination or the concern about the independence of the arbitrator would be. And we can quibble with what the FAA says, but the FAA indicates that under Section 10A, that if there's a concern about bias, it happens at the conclusion or after the award. That's when it occurs. Well, I'm going to stop you there because you seem to me that you've turned it on its head and that what the district court has to do is to first decide whether there's an enforceable contract that provides for arbitration. Yes. And that requires the district court to go through a series of examinations, the first being under California theory is that we have an adhesion contract, which is one consideration. Then we look at procedural unconscionability, and then we look at substantive unconscionability. And as Judge Moritz was just saying, an unfair or an uneven, inequitable arbitrator selection clause can be evidence of substantive unconscionability. Do you take issue with that? I do not take issue with the concept that the clause can, that Section 5 says that there must be a stated way in which the arbitrator can be selected. And we stated in our agreement that APC could select a neutral provider. And the district court concluded that that was unconscionable because, as Judge Moritz pointed out, there's no restraint on your client in terms of who they might select as the arbitrator. And looking at the clause, just as the clause, that can be interpreted as substantively unconscionable. It can be, but that would disregard the presumption of the arbitrator being neutral when they sign up in the first place. And then in the second place, the FAA, if Congress said there's two things you must do, you must identify an arbitration provider by name within the contract, or you must give, both sides must agree upon the identity of the arbitrator to go forward first, then it would have said so. It doesn't say that. It says under Section 5 there must be a method to select. But it also says that an arbitration contract's not enforceable if it's unconscionable. So it seems to me that you don't get to your part until you first establish that you have an enforceable arbitration agreement. And the piece about whether you have an unconscionable provision impacts whether you have an unenforceable contract. Right. Well, let's look at a couple examples of this. And the first would be, and I want to back up because you had used the word in an employment contract, and I think that that's an important point in this analysis. It's an important point with respect to where the district court began its analysis as well. First of all. I think I said adhesion contract. I don't think I said employment contract. Maybe in an employment setting. But the point is, this is not an employment setting. And I don't mean to backtrack. I will get to your answer. But this is a voluntary program where people come to this country to get an educational and cultural experience. So to the extent that some or all of this analysis that takes place in this case arises out of employment contracts, which do seem to carve out and give more deference to the selection of the arbitrator than in a standard non-employment contract. And that would be an inappropriate carve-out under the Concepcion case. So when we have a- Well, is it your position that if it's not an employment contract, that you can have a one-sided arbitrator selection provision that allows one party, the more powerful party, to pick a biased arbitrator? I don't, but the words don't say biased. It says neutral provider. Yeah, and we've got California case law that says even where it says neutral, in Mango or Magno, it says, and even in agreement then on its face, requires neutral arbitration may be unconscionable. If in practice, the stronger party may select a biased arbitrator with no recourse from the weaker party. Right. And the facts, and I've been saying Magno or Mango as well, the facts in that case are substantially different than the facts in this case. The facts in the Magno case is that a for-profit school went to the student's home, went into their home, and then spent time with the students and advised that they could get certain benefits from their school contract and from participating in this for-profit program, which were material representations, and they had no expectation of having to arbitrate this matter on the terms, on sets of rules created by the private school, and in Indiana. That's substantially different than the facts in this case. Let me just, I still want to answer your question even more. Let's just assume we had put the word jams or AAA into this. That does not necessarily create, well, you and I may have more comfort that this would create some sort of, identification of independence and more neutral standard. The evidence is clear in this case that our client brings in about 2,000 au pairs a year, and we've been in business for 35 years. So let's just take the last two, let's just take this as an example for 10 years and 2,000 employees. That would be 20,000 contracts that say jams or AAA in it. Who's not to say that the au pair then could make an argument that, well, look, you've got a nice relationship with jams or AAA. I think that's unfair or unbiased. Well, the point is they had an opportunity in that setting, in that hypothetical, they had an opportunity to at least agree and know what they were agreeing to. They agreed in advance in your hypothetical to this particular arbitration provider. In our situation, they're agreeing to give you 100% control over that decision. There is a difference. They certainly have a weaker argument in your hypothetical. I guess I would disagree, because we do say we're providing for a neutral provider, and that if the au pairs in saying neutral provider, they were inappropriate, they thought that was too vague, didn't state a name, didn't identify it, then the remedy would have been to go back to Section 5, go back to the district court, and the district court could name the provider. It's in the first sentence of Section 5 of the FAA. I want to take a moment then to turn to, and actually I'm going to reserve the rest of my time if I may. Thank you. Thank you. Good morning, Your Honors. May it please the Court. David Seligman from Towards Justice for Plaintiffs Appellees. Let's be clear about what the arbitration requirements at issue in this case would permit. Had Au Pair Care decided, while Ms. Harning and Ms. Jimenez worked as au pairs in the United States, that they had breached their au pair agreements by, for example, hitchhiking or getting married, they could have initiated arbitrations against them before arbitrators handpicked by Au Pair Care, pursuant to rules hand-selected by Au Pair Care, rules that could have required Ms. Harning and Ms. Jimenez to bear extraordinary arbitration costs. That arbitration would occur in San Francisco, California, across the country from where Ms. Harning and Ms. Jimenez worked. And if Au Pair Care prevailed in those arbitrations, then in addition to any costs imposed on them by the arbitration provider, and it's not clear who the provider would be, of course, on the face of this contract, then Ms. Harning and Ms. Jimenez would also have to pay Au Pair Care's attorney's fees. That's an extraordinarily harsh and an oppressive arbitration requirement. Well, let's break it down. With regard to the forum selection clause, both of your clients, both the plaintiffs, read this agreement in their native language before they signed it, correct? There was testimony to that in depositions. It's not clear still how much of it they read. It seemed pretty clear to me looking at the depositions. The district court didn't mention that for some reason. That goes to, I think, an important point here, which is to the extent that you're weighing conflicting evidence. That's a clear air standard. And certainly this court, in the first instance, shouldn't be weighing that evidence. It's pretty clear. They both admitted they got it in their native language. One got it in German and one got it in Spanish. And they also signed an agreement that says that they read and understand English, right in the agreement. And the agreement states very clearly that Au Pair Care is located in San Francisco, California, and that all arbitrations will be held in San Francisco, California. I'm having a hard time seeing why that's a problem under California law. With respect to the venue selection provision? Yes. Is that what you're referring to? Yes. So as an initial matter, the venue selection provision should not be examined in isolation. This is how California unconscionability law works. It is part of an integrated scheme along with the arbitrator selection provision. So, for example, on the face of this contract, we don't know how many times Ms. Jimenez and Ms. Harning would have to go to California. The district court noted that this contract didn't state whether they could appear telephonically. The arbitration agreement that the court struck down in Magno, which Your Honor discussed earlier, that arbitration agreement said that those plaintiffs could appear telephonically. They could appear telephonically in Indiana. And even still, the district court said that was unconscionable and unenforceable. Here we don't know if that's the case. Not because of the venue selection provision, though, right? Well, the venue selection provision did go toward the ultimate finding of unconscionability. I mean, here the district court made a separate finding of substantive unconscionability as to the venue selection provision. And I struggle with that, too, in the sense that this was their principal place of business. What's so unusual about that that that would be the forum? And I think, again, I don't think that this is certainly, I don't think that in standing alone, you know, that it might not be true that this venue selection provision on its own would lead to the invalidation of the entire contract. Certainly, along with everything else, it substantially increases the unconscionability. And that's especially because of OPERACA's ability to, again, identify the rules of the arbitration forum. Well, it's important because eventually, when you get to the end of all this, you apply a sliding scale. And you balance the procedural unconscionability along with the substantive unconscionability. And here, if we take out the venue provision, you've got left the arbitration provision as what the district court found unconscionable. So it sort of lightens the balance. I'm sorry. And fee shifting. Oh, I'm sorry. Fee shifting, yes. But it makes a difference in the overall equation. I don't think that the analysis is a simple counting. But I take your point if you agree that if you think, for example, that this is less substantively unconscionable than the district court did below, then that might affect the ultimate analysis. But let's be clear. Neither party in this case has identified any case anywhere, not in California, not anywhere in the country, where court has enforced an arbitration requirement that allows the drafting party to unilaterally decide who the arbitrator should be and what the arbitration rules should be. So Mr. Quinn identified earlier. Wait a minute. Okay. You're talking over Judge Moritz's point, which is that if we were to disagree with the district court and I were to say there's nothing wrong with this reciprocal fee shifting provision because it doesn't affect statutory rights and there's nothing wrong with this venue selection provision, I'm down to one provision of the contract that is substantively unconscionable. And under California law, the presumption is you sever. And under the statutory law, there's a formula for figuring out how you pick the arbitrator. Why wouldn't I do that instead of throwing out the whole arbitration agreement? Let me take those in turn. I take your question as this goes more towards severance, right? It goes to pervasive unconscionability. Whether it's permeated by unconscionability giving rise to severance. So as an initial matter, both parties agree that the standard for severance is abuse of discretion here. That's been clear throughout the briefing. So the question is whether Judge Arguello abused her discretion in declining to sever these provisions. I think that along with the question of how many terms might be substantively unconscionable under the agreement, I think that the more important determination, the more dispositive issue on the severance question is the fact that severing this requirement here would require the court to rewrite the agreement, would require the court to select a new mechanism for selecting an arbitrator. Why couldn't we just use Section 5? With respect, Your Honor, that's precisely not what Section 5 is designed to do. The first sentence of Section 5 is, if in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed. So nothing in Section 5. Well, if you say it's unconscionable doing that, then the court could say, okay, you're going to use GEMS. You're going to use the AAA or whoever. So don't we have to look at this, is there an agreement to arbitrate initially? Did the parties both agree to arbitrate? And I think the answer has got to be yes to that. Now, then the next question becomes, what if any provision is unconscionable? And is every adhesion contract or contract of adhesion, in your opinion, unconscionable? It is procedurally unconscionable to some degree. So every form contract that has an arbitration clause in it is unconscionable. Is that your position? No, Your Honor. Well, tell me then what your position is with respect to what makes this unconscionable. With respect to procedural unconscionability, first of all, the California Supreme Court has made clear in Sanchez and Baltazar. Okay, now you've got one client who lives in Germany, right, and read this agreement in English or in German in Germany. And if she's in Germany, why does she care whether she has to come to California or New York? Or she could ask to use the telephone. We haven't gotten there yet. Well, first of all, we don't know if she could use the telephone, right, because the agreement allows AuPairCare to select the rules of the arbitration. Well, I mean, you keep saying all these different things, but you haven't come to grips with the issues in this particular case. With respect, Your Honor. In order of importance, what makes this contract unconscionable? The fact that AuPairCare reserves for itself the unilateral ability to select an arbitrator and to select the arbitration form. Now, that can be severed, correct? No, Your Honor. Neither party has cited any case where court has found that such a term was severed? Armendariz. Armendariz. They severed the biased arbitration clause, and then they used the default provision in California Code of Civil Procedure, Section 1281.6. With respect, my understanding from Armendariz, Armendariz had a slightly different scheme for determining who would select the arbitrator, and a different scheme for determining which party would select the arbitrator. It wasn't the unilateral ability to select the arbitrator. In any event, the court defaulted to the California Code to fill in the arbitrator selection clause. That's right. But, again, I think that Section 5 is not designed, Section 5 is not designed for situations where, and it doesn't I'm talking about California Code of Civil Procedure, Section 1281.6. And the Federal Arbitration Act would apply here in federal court. So with respect to Section 5, Section 5 doesn't contemplate situations where the parties have clearly settled on a mechanism for deciding who the arbitrator should be, and that's severed, and instead Well, that goes back to your adhesion issue. You said that parties have agreed to this, but you're saying that they didn't agree to it because it's a contract of adhesion. And you said, yes, every contract of adhesion is unconscionable. No, Your Honor, every contract of adhesion What does that leave us with? Every contract of adhesion is procedurally unconscionable to at least some degree that triggers substantive scrutiny. And once you get to substantive scrutiny, you look at the terms of the arbitration agreement, right? Here, the drafting party has reserved for itself the unilateral ability to select an arbitrator. With respect to severance, some You're going too fast. I can't listen that fast. Sorry. Sorry. So the drafting party has reserved for itself the unilateral ability to select an arbitrator. Right. With respect to rules of the arbitration forum, with respect to severance, allow me to make two more points. First is, this court was clear in its Nesbitt decision, right, that it was not going to sever, it was not going to give the drafter the benefit of the doubt on severance where there wasn't a severance provision. There is no severance provision here. You shouldn't give the drafter, in this case, the benefit of a severance provision. Furthermore, I appreciate that my friend brought up Judge Timkovich's concurrence in the Dish case. Judge Timkovich says, in the Dish case, he says, and I think this is true, for better or for worse, it's not that hard anymore to draft an agreement that is clearly enforceable under California law and federal law. It's easy. You put it in the contract. In fact, it's clear that the defendants knew how to do that. In their 2007 agreements, they knew how to designate JAM. They totally understood how to do that. They not only knew how to designate JAM, they knew how to designate JAM and they knew how to provide for the parties to appear telephonically. For some reason, and it's not clear why, they removed those terms from the agreement and made their agreements substantially more drafter friendly. It's important to sever, not only because on the face of this agreement, it's not clear that severance was intended. Furthermore, the severing would require the court to rewrite the agreement.  In fact, the Supreme Court has made clear again and again and again that the Federal Arbitration Act calls for the enforcement of arbitration agreements according to their terms. And lastly, and California law is clear on this too, we don't want to create incentives for drafters to pack their agreements with unconscionable terms, knowing that at worst those terms will be severed and the clauses enforced in their absence. I think that there's lots here to suggest that these defendants packed their agreements with unconscionable terms and made them substantially less fair than they were before. Judge Kelly asked you to prioritize, you know, why you thought, you know, start prioritizing and you mentioned the arbitration provision. What would be next on your list in terms of, would the fee shifting, where would the fee shifting provision come in in terms of your, on the scale of unconscionability? I think that Judge Donato's opinion in the Northern District of California, the Alonzo case, is absolutely correct on this point. The California Supreme Court made clear in Sanchez, the Ninth Circuit affirmed it in Tompkins, that courts cannot, that clauses cannot force employees, and there should be no question that these are employees, to pay costs that they wouldn't otherwise have to pay. Those are unwaivable statutory rights that they're talking about in those cases, right? That's right. Here we're talking about breach of contract. It's limited to breach of contract. So, I don't, that's actually not how I interpret the Sanchez decision, and that's not how I interpret the Tompkins decision. Those decisions discuss the employment arrangement in terms of the imbalances of bargaining power, and for those reasons, the California legislature has decided to make a different tradeoff in employment agreements than they have in consumer relationships. In consumer relationships, you can have prevailing party provisions. In employment relationships, you cannot. Let me, in Tompkins versus 23 and Me, the Ninth Circuit said, interpreting California law, that the plaintiffs have not identified any case where a state appellate court held that a bilateral clause awarding attorney's fees and costs to the prevailing party was unconscionable. Do you have such a case? I'm not sure if I do have such a case, but I think it's important. In Tompkins, the court also said, to be clear, that the same rule and analysis does not apply in the employment context where the legislature has made a different decision. I also want to highlight something that's... You're out of time, so you need to wrap it up. ...which is that agreements like the one before us here would allow drafting parties to entirely bypass important protections, precisely like the protections that this court implemented in the Nesbitt case, where the court said you can't impose AAA's commercial rules in FLISA cases. This is a FLISA case. Even in their opening brief, the drafting party here suggested that they'd be interested in implementing AAA's commercial rules. That is clearly unenforceable, even as a matter of Tenth Circuit law. Thank you. As I had mentioned moments ago, there is a difference between the employment case arena in arbitration and non-employment case in arbitrina. And it was just mentioned that there's no questions. These are employees and perhaps not part of the record at the moment, but the district court in this case has denied the motion for summary judgment filed by Ms. Harning and Ms. Jimenez on behalf of themselves and the class members seeking employment, seeking employer status of APC and denying the question of joint employer status. So the concept of using employee cases to resolve this matter at this stage is inappropriate. When I started my discussion, I went right to Judge Tymkiewicz's concurring opinion where he indicated that Congress has endeavored to minimize judicial oversight in the FAA. I think as lawyers, judges, we're all at times wanting to go in and make sure things are fair the way we see them being fair. Congress has put together an act that doesn't include some of the things that are being suggested by the plaintiffs in this case. We have to view the FAA in terms of we have to view the unconscionability question in the context of the FAA. What did the FAA lay out? If it isn't unconscionable, then the FAA provides the remedy selection for the selection of the arbitrator in this, and it's in Section 10. With respect very quickly to fee shifting, it's simply not. The discussions, again, went to suggestions of the employment cases, and I'm sorry I'm out of time. Thank you. Thank you, counsel. We will take this matter under advisement and issue an opinion as soon as we can. The next matter and final matter.